UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



TRANSFIELD ER CAPE LTD.,

    Plaintiff,

- against -

B&L TRANSOIL (HOLDINGS)
LIMITED, N.L TRANS OIL LTD.,
TRANSOCEAN AGENCIES LTD., and
B&L TRANSOIL LTD.,

    Defendants.

**OPINION AND ORDER**

08 Civ. 11385 (PKL)

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
George Chalos, Esq

Attorneys for Plaintiff

CLYDE & CO. US LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Christopher Carlsen, Esq.

Attorneys for Defendants

**LEISURE, District Judge:**

Defendants B&L Transoil (Holdings) Limited, N.L. Trans Oil Ltd., Transocean Agencies Ltd., and B&L Transoil Ltd., (collectively "B&L"), move this Court to vacate the writ of attachment and to dismiss plaintiff Transfield ER Cape Ltd.'s ("Transfield") Second Amended Complaint. In connection with its opposition to B&L's motion to vacate, Transfield seeks to once again amend its complaint in order to allege facts supporting this Court's exercise of quasi in rem jurisdiction over the underlying dispute. For the reasons stated below, B&L's motion to vacate is GRANTED, and Transfield's request to further amend its complaint is DENIED.

## BACKGROUND

This action arises out of Transfield's allegations that B&L had the local court of Santa Cruz de Tenerife, Canary Islands ("Court of Santa Cruz") wrongfully arrest the M/V C. Laurel, Transfield's vessel. Plaintiff alleges that the vessel was arrested in an effort to obtain security for a claim of unpaid bunkers due and owing to defendants by a non-party to the instant action. (Second Am. Compl. ¶ 9.)

This is the second time defendants seek vacatur of the writ of attachment. This Court previously held an Order to Show Cause hearing on February 4, 2009, where the Court heard from the parties regarding B&L's claims that Transfield failed to

assert a valid prima facie admiralty claim of wrongful arrest, and that the attachment should be vacated on equitable grounds. The Court agreed that in order for Transfield's claim of wrongful arrest to be considered a prima facie admiralty claim, Transfield needed to allege that defendants wrongfully arrested plaintiff's vessel with bad faith, malice, or gross negligence. Therefore, the Court granted defendants' motion to vacate the attachment, but stayed the release of the attached funds for ten days to allow Transfield to amend its complaint to include bad faith allegations. (See Order dated Feb. 4, 2009, Docket No. 18.)  Also at the February 4 hearing, it became clear that plaintiff was no longer able to pursue its claim in the Court of Santa Cruz, as plaintiff originally alleged in its complaint. The Court ordered plaintiff to include a statement as to when and in what forum plaintiff would be adjudicating its wrongful arrest claim if plaintiff chose to amend its complaint and pursue the attachment. (Id.)

On February 13, 2009, plaintiff filed its Second Amended Verified Complaint, adding allegations that B&L acted in bad faith, maliciously, and in reckless disregard of Transfield's rights.  Specifically, Transfield alleges (i) that B&L never asserted a claim against Tranfield for the unpaid bunkers; (ii) that B&L had no claim in law, equity, or admiralty against Transfield when B&L sought to arrest Transfield's vessel;

2

(iii) that B&L failed to seek reasonable alternative security before seeking the arrest of Transfield's vessel; and (iv) that this was done in bad faith, malice, and with reckless disregard of Transfield's rights. (Second Am. Compl. ¶¶ 14-19.) Transfield further amended its complaint to assert that it "intends to commence a foreign action in London arbitration" for the underlying wrongful arrest claim. (Id. ¶ 26.)

In its subsequent motion to vacate the writ of attachment, B&L contends that Transfield's allegations in the Second Amended Verified Complaint still fail to assert a prima facie admiralty claim of wrongful arrest. Moreover, B&L argues that even if Transfield establishes a prima facie admiralty claim, the writ of attachment should be vacated because there is no forum to adjudicate such a claim.  Defendants assert that the parties are not subject to any contract that requires arbitration in London, and therefore there is no basis for Transfield's proposed arbitration in London.

In opposition to the motion to vacate, Transfield asserts that it alleges a prima facie claim of wrongful arrest through its factual allegations that B&L never had a contractual dispute with Transfield, and thus, it was wrongful for B&L to seek the arrest of Transfield's vessel.  In addition, with respect to B&L's argument that the attachment should be vacated on the ground that there is no forum to adjudicate Transfield's claims,

3

Transfield asserts that it has actively pursued arbitration in London, but that B&L has refused to engage in such arbitration. As such, Transfield proposes that it proceed before this Court pursuant to quasi in rem jurisdiction obtained over B&L through the attachment of B&L's funds.

At the Order to Show Cause hearing, held on March 26, 2009, the Court recognized that Transfield could obtain quasi in rem jurisdiction over B&L, up to the amount attached, if it was able to amend its complaint to that effect. However, the Court was unable to determine whether such amendment would be appropriate since the parties did not adequately brief the issue of which law would govern the dispute, such that it was impossible for the Court to determine whether the proposed amendment would be futile. Subsequently, at this Court's request, the parties submitted supplemental briefing on these issues.

## DISCUSSION

There are currently three issues pending before this Court: (1) whether, in its Second Amended Complaint, Transfield alleges a prima facie claim of wrongful arrest, (2) whether there is a forum for Transfield to adjudicate its claim, and (3) whether Transfield's proposed amendment to proceed in this Court quasi in rem would be futile under the applicable law.

## I.   Prima Facie Claim for Wrongful Arrest

B&L contends that Transfield's contentions of bad faith, malice, and recklessness are merely bare allegations, and do not satisfy the required "showing" of bad faith, malice, or gross negligence. The Court rejects this argument for the reasons stated on the record at the March 26, 2009 hearing. As the Court explained at the Order to Show Cause Hearing, Transfield's allegations that B&L improperly arrested Transfield's vessel without having a valid claim and without affording Transfield an opportunity to post alternative security satisfy the prima facie standard. (See Hr'g Tr. 6:1 - 8:12, Mar. 26, 2009.) Whether these allegations ultimately satisfy the requisite "showing" to hold B&L liable for wrongful arrest should not be resolved at this juncture. See Chiquita Int'l Ltd. v. MV Bosse, 518 F. Supp. 2d 589, 597 (S.D.N.Y. 2007) (Leisure, J.) ("A detailed discussion of the merits . . . has little bearing on the motion to vacate, which is decided based on whether a prima facie claim is shown and technical requirements for attachment have been met. . . The Court need not, and should not, reach the merits of the [underlying] action as that is properly left to the [foreign] arbitrators to decide." (internal citations omitted)).

## II. Forum to Adjudicate the Underlying Dispute

B&L argues that, even if Transfield alleges a valid prima facie admiralty claim for wrongful arrest, the writ of

5

attachment should be vacated because no forum exists for plaintiff to adjudicate the merits of the wrongful arrest claim. In opposition, Transfield contends that B&L has "continued to use its best efforts to prevent the adjudication of the underlying merits of Plaintiff's wrongful arrest claim." (Pl.'s Opp'n 7.) Moreover, Transfield submits that even if there is no other forum to adjudicate its dispute, it can pursue its claim for wrongful arrest before this Court based upon quasi in rem jurisdiction over B&L's property.

As this Court explained during the Order to Show Cause hearing (see Hr'g Tr. 10:1 - 10:11, Mar. 26, 2009), the Court recognizes that Rule B attachments serve the dual purpose of insuring that defendants appear in an action, and assuring satisfaction of a judgment if a suit is successful. See Winter Storm Shipping v. TPI, 310 F.3d 263, 268 (2d Cir. 2002); see also Limonium Mar., S.A. v. Mizushima Marinera, S.A., 961 F. Supp. 600, 605 (S.D.N.Y. 1997) ("Through attachment of a defendant's property in the district, a maritime or admiralty court gains jurisdiction over the defendant's 'person,' and the plaintiff can gain a judgment against the defendant up to the value of the property attached."). As such, if Transfield's claim is timely pursuant to the applicable law, Transfield can litigate its claims in this Court pursuant to this Court's quasi in rem jurisdiction over B&L.

6

## II. Leave to Amend the Second Amended Complaint

The Court next considers Transfield's request for leave to amend its complaint a third time in order to proceed in this Court. The Court must first determine the law that this Court would apply to the dispute if it was litigated in this forum, and then determine whether it is futile to bring such an amendment in light of the applicable law.

### A. Choice of Law

In their supplemental papers, both Transfield and B&L cite the applicable standard for determining a choice-of-law issue in maritime tort cases. (See Pl.'s Supp. Mem. 3-4; Defs.' Supp. Mem. 2-3.) In particular, this Court must look to "(1) the place of the wrongful act; (2) the law of the ship's flag; (3) the domicile of the injured party; (4) the domicile of the shipowner; (5) the place of the contract; (6) the inacessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations." Carbotrade S.p.A. v. Bureau Veritas, 99 F.3d 86, 90 (2d Cir. 1996) (footnote omitted) (citing the "Lauritzen triad," Lauritzen v. Larsen, 345 U.S. 571, 583-92 (1953), Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 382 (1959), and Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 309 (1970)). While a district court conducting a choice-of-law analysis considers all of these factors, "[t]he weight to be given to each factor varies from case to case." Id.

7

Here, the parties dispute whether this Court should apply United States or Spanish law. According to Transfield, United States law is appropriate by virtue of Transfield's registration with the New York Division of Corporations. (Pl.'s Supp. Mem. 4.) Plaintiff contends that because it is registered to do business in New York and it has availed itself of the rights and protections of this forum, United State law is appropriate. (Id.) Transfield further asserts that the application of United States law is warranted because B&L is subject to this Court's quasi in rem jurisdiction. (Id. at 5.) By contrast, B&L asserts that Spanish law applies because the Court of Santa Cruz ordered the arrest of Transfield's vessel pursuant to Spanish law. (Defs.' Supp. Mem. 3.) Moreover, according to B&L, the fact that plaintiff is subject to personal jurisdiction in New York does not support the application of United State law since neither Transfield's registration to do business in New York, nor its appointment of an agent of service, suggests that plaintiff is domiciled in New York. (Id. at 4.)

The Court agrees with B&L and holds that Transfield's wrongful arrest claim is governed by Spanish law. While only one factor clearly favors the application of Spanish law - the place of the wrongful act - this Court finds that none of the relevant factors favor the application of United States law. In considering the first factor, it is significant that the parties

8

do not dispute that the vessel was arrested by the Court of Santa Cruz pursuant to Spanish law, and that this allegedly wrongful arrest is the subject of Transfield's claim.  Moreover, unlike situations where "a seaman is injured aboard a vessel and the place of the tort is often happenstance," Carbotrade, 99 F.3d at 92, here, the M/V C. Laurel was arrested while in port at Santa Cruz. See Garcia v. M/V Kubbar, 4 F. Supp. 2d 99, 104-05 (N.D.N.Y. 1998) (explaining that the "place of the wrongful act" is given more weight where the parties or vessel have some connection to the place of injury such that it was foreseeable or predictable that injury might occur in that place (citing Induron Corp. v. M/V Aigianis, No. 89-305, 1989 U.S. Dist. LEXIS 19074, at *16-17 (D.N.J. Sept. 5, 1989) (applying United States law where alleged tort occurred in the United States while the ship was moored at a pier in Brooklyn, and "not a case in which the ship was navigating through waters subject to a variety of legal authorities"))).  Because the place of injury was not happenstance – that is, a port is a predictable location for a wrongful arrest claim to arise – the Court accords considerable weight to the place of the injury factor.

The law of the ship's flag, which is the second factor this Court must consider, points to Panamanian law. (See Pl.'s Supp. Mem. 6.)  Notably, neither party suggests the application of Panamanian law. See Garcia, 4 F. Supp. 2d at 105 (suggesting

9

that factors should be afforded less weight when they point to forums not supported by either side of an action). Moreover, the fact that the alleged injury occurred in port rather than while the vessel was navigating the waters, reduces the import of this factor. See Carbotrade, 99 F.3d at 92-93 ("Whatever significance law of the flag may have in cases where . . . other factors fail to point clearly to another jurisdiction's law, we see no reason to apply the law of the flag here in preference to that of another jurisdiction whose ties are more pertinent to the dispute. . . ."). Accordingly, the Court gives little weight to the second factor.

The third, fourth, and eighth factors, which look to the domicile of the injured party and the domicile and base of operations of the shipowner, fail to support the application of United States or Spanish law. A corporation does not have a domicile, but a citizenship, which is based upon the place of incorporation and the principal place of the corporation's business. Blohm + Voss GmbH v. M/V Olympia Explorer, No. 05 Civ. 7753, 2008 U.S. Dist. LEXIS 54034, at *15-16 n.2 (S.D.N.Y. July 14, 2008) (explaining that the court must look to the place of incorporation and the principal place of business as the relevant factors when analyzing domicile for a maritime choice-of-law inquiry (citing Carbotrade, 99 F.3d at 92 n.2)). Accordingly, the fact that Transfield is registered to do

business in New York is irrelevant to the choice-of-law analysis. Similarly, it is of no significance to this Court's analysis that B&L is subject to quasi in rem jurisdiction in this District. More pertinent is the fact that this action concerns foreign business entities that are neither incorporated nor have their principal place of business in the United States or in Santa Cruz. (See Second Am. Compl. ¶¶ 2-6.)

The fifth factor, namely the place of contract, is not relevant since this is not a contractual dispute. Similarly, the sixth factor, the inaccessibility of the foreign forum, is not relevant to this analysis as "this factor is more pertinent to a forum non conveniens[1] test than to choice of law test," and this factor should not be a consideration "[w]here there is no bar to applying foreign law in the local forum." Blohm, 2008 U.S. Dist. LEXIS 54034, at *16 (internal quotations and citations omitted). Accordingly, because there is no bar to the application of Spanish law, the Court gives little weight to this factor. Finally, the seventh factor, the law of the forum,

---

[1] B&L argues that even if plaintiff were permitted to amend the complaint, a dismissal motion based upon the doctrine of forum non conveniens would likely be successful because the case has no connection to the United States. (See Defs.' Supp. Mem. 6-8.) Because the Court finds that Transfield cannot amend its complaint, the Court does not reach the forum non conveniens issue. Nevertheless, the Court notes that it is unclear how the Court of Santa Cruz can be considered an adequate alternative forum (see id. at 7) since Transfield's claim would be time barred in Santa Cruz. See Norex Petroluem Ltd. v. Access Indus., Inc., 416 F.3d 146, 159 (2d Cir. 2005) ("We here clarify that a case cannot be dismissed on grounds of forum non conveniens unless there is presently available to the plaintiff an alternative forum that will permit it to litigate the subject matter of its dispute.").

11

carries little weight as this factor's "function may be to add weight where there is specific statutory law intended by Congress to apply to the circumstances." Garcia, 4 F. Supp. 2d at 106. Since the alleged wrong at issue has no connection to the United States, and this is not a situation where Congress intended to have American law apply, the Court gives this factor little weight. See Blohm, 2008 U.S. Dist. LEXIS 54034 at *16-17 (explaining that because the transaction at issue had no connection to the United States, "there is no sound basis for the application of American law to these circumstances, and the Court gives this factor little weight").

After considering all of the factors necessary to resolving a choice-of-law issue for maritime torts, this Court concludes that Spanish law is most appropriate in this case.

### A. Futility of Transfield's Proposed Amendment

Having concluded that Spanish law should be applied to resolve Transfield's wrongful arrest claim, the Court finds that Transfield's proposed amendment is futile, and therefore denies Transfield's request to amend its complaint. Where, as here, it is undisputed that plaintiff's proposed claim is time barred (see Defs.' Supp. Mem. 2, 5), any amendment will be denied as futile. See, e.g., Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the

applicable statute of limitations."). Because Transfield only proposes this Court as a forum to adjudicate this dispute, and because Trasnfield's claim is time barred under the applicable law, the writ of attachment is vacated and plaintiff's complaint is hereby dismissed.[2]

## CONCLUSION

For the reasons stated above, B&L's motion to vacate is GRANTED, and Transfield's request to further amend its complaint is DENIED. As the attachment is the only basis for jurisdiction in this Court, Transfield's Second Amended Complaint is DISMISSED without prejudice. The Clerk of Court is instructed to close this case. The Court further directs that if Transfield ever commences a new action in this District concerning the dispute at issue in the Second Amended Complaint, Transfield shall designate the new action as related to this action.

SO ORDERED.
New York, New York
June **24**, 2009

*Peter K. Leisure*

U.S.D.J.

---

[2] According to B&L's undisputed explanation of Spanish law, procedural time limits in Spain are absolute and cannot be extended. (Defs.' Supp. Mem. 5.) As such, there does not appear to be a Spanish equivalent to Federal Rule of Civil Procedure 15(c), which provides that certain amendments to a pleading relate back to the date of the original pleading. Therefore, under Spanish law, Transfield's proposed amendments could not cure the deficiencies in the Second Amended Complaint.

13